**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PAUL STERLING on behalf of himself** | § | |
| **individually, and ALL OTHERS** | § | |
| **SIMILARLY SITUATED** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 4:20-cv-00910** |
| **v.** | § | |
| | § | |
| **GREATER HOUSTON** | § | |
| **TRANSPORTATION COMPANY,** | § | |
| **TEXAS PARATRANSIT, INC.,** | § | |
| **YELLOW CAB PARATRANSIT** | § | |
| **SERVICES, INC. and METROPOLITAN** | § | |
| **TRANSIT AUTHORITY OF HARRIS** | § | |
| **COUNTY,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT**

1.      Defendants Greater Houston Transportation Company, Texas Paratransit, Inc. and Yellow Cab Paratransit Services, Inc. (collectively "Yellow Cab") and Defendant Metropolitan Transit Authority of Harris County ("Metro") (Yellow Cab and Metro shall be referred collectively as "Defendants") required Plaintiff Paul Sterling ("Plaintiff") to work more than forty hours in a workweek without overtime compensation.  Defendants misclassified Plaintiff and other similarly situated workers as independent contractors instead of as employees.  By misclassifying them as independent contractors, Defendants illegally denied Plaintiff and the proposed Class Members compensation at time and one half their regular rates of pay for all hours worked over 40 in a workweek.

2.      Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for all hours in excess of forty in a workweek at one and one-half times their

regular rates of pay. *See* 29 U.S.C. § 207(a).  On behalf of himself and all other similarly situated employees, Plaintiff brings this action as a collective action under the FLSA, 29 U.S.C. § 216(b). Members of the collective action are referred to as the "Class Members."

## SUBJECT MATTER JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.    Venue is proper in this District because Defendants do a significant portion of their business in this District and many of the wrongs herein alleged occurred in this District.

## PARTIES AND PERSONAL JURISDICTION

5.    Plaintiff Paul Sterling is an individual residing in Porter, Texas.  Plaintiff's written consent to this action is attached hereto as Exhibit "A."

6.    The Class Members are all current and former drivers paid on an hourly rate basis and who were classified as independent contractors by Defendants at any time during the three-year period before the filing of this Complaint.

7.    Defendant Greater Houston Transportation Company is a domestic company organized under the laws of Texas.  Said Defendant can be served with process by serving its registered agent, Bartt G. Thompson, at 1415 Louisiana St., 22nd Floor, Houston, TX 77002.

8.    Defendant Texas Paratransit, Inc. is a domestic company organized under the laws of Texas.  Said Defendant can be served with process by serving its registered agent, Bartt G. Thompson, at 1415 Louisiana St., 22nd Floor, Houston, TX 77002.

9.    Defendant Yellow Cab Paratransit Services, Inc. is a domestic company organized under the laws of Texas.  Said Defendant can be served with process by serving its registered agent, Bartt G. Thompson, at 1415 Louisiana St., 22nd Floor, Houston, TX 77002.

10.     Defendant Metropolitan Transit Authority of Harris County is an entity existing under the laws of Texas and may be served with process by serving its president, Thomas C. Lambert, at 1900 Main Street, Houston, TX 77002.

## COVERAGE

11.     At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA.  29 U.S.C. § 203(d).

12.     At all material times, Defendants have been enterprises within the meaning of 3(r) of the FLSA.  29 U.S.C. § 203(r).

13.     At all material times, Defendants have been an enterprise or enterprises in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

14.     Furthermore, Defendants have an annual gross business volume of not less than $500,000.

15.     At all material times, Plaintiff and Class Members were employees who were engaged in commerce or in the production of goods for commerce as required by 29 USC §§ 206-207.

## FACTS

16.     Metro provides public transportation services in Harris County.  One of the services Metro provides is the Metrolift service.  Under the Metrolift program, a driver will pick up residents of Harris County at any location and transport those individuals to their destination for free.

17.     Previously, Metro entered into an agreement with Yellow Cab whereby Yellow Cab supplied the drivers to Metro for the Metrolift program.  Yellow Cab interviewed, evaluated, and

3

hired the drivers.  Yellow Cab gathered the employment records for the drivers, performed drug tests on the drivers, and other background checks.  Yellow Cab also set the schedules for the drivers and set the terms and conditions of their work.  For their work, the drivers were paid an hourly rate that was jointly set by Yellow Cab and Metro.

18.     After hiring the drivers, Yellow Cab assigned the drivers to work for Metro in the Metrolift program.  The drivers were required to follow Metro's policies and procedures.  Metro employees supervised and monitored the daily activities of the drivers.  If the drivers failed to follow Metro's policies and procedures, Metro would discipline them by issuing a fine.  The drivers were also told where to go, which passengers to transport, and the time they were required to appear at each location by a Metro employee.

19.     Before driving for Metro, the drivers were required to undergo training by Metro. The drivers also wore a Metro uniform and drove a vehicle with the Metro logo on it.

20.     The drivers did not use their personal vehicle or own the vehicle that they drove for work.  The vehicles were owned by Yellow Cab and assigned to the drivers.

21.     The drivers also did not charge a fare to the passengers that they would keep, but instead, were paid an hourly rate of pay.  That is, the drivers were paid a set amount for each hour that they worked for Defendants.   The drivers also "clocked in" and "clocked out" using a radio system with Metro.

22.     Plaintiff was employed by Defendants as a driver from approximately August 2007 to October 2018 – approximately 11 years.

23.     Plaintiff regularly worked over 40 hours per week.  In fact, 60 hour weeks were common.

24.     Unfortunately, when Plaintiff worked more than 40 hours per week, he was not paid any overtime wages.   That is because Metro and Yellow Cab misclassified Plaintiff as an independent contractor instead of as an employee.   By misclassifying Plaintiff as an independent contractor, Defendants were able to substantially reduce their overhead charges.

25.     Like Plaintiff, the Class Members were also drivers.

26.     Like Plaintiff, the Class Members were also paid an hourly rate.

27.     Like Plaintiff, the Class Members were also misclassified as independent contractors.

28.     Like Plaintiff, the Class Members also were not paid overtime wages when they worked more than 40 hours in a workweek.

29.     Given that they were misclassified as independent contractors, they were denied overtime pay.

30.     The Plaintiff and Class Members were not independent contractors, but were employees under the FLSA.

31.     Metro told Plaintiff and the Class Members which customers to pick up, when to pick them up, and where to drop them off.

32.     Yellow Cab and Metro hired/fired, supervised, directed, disciplined, scheduled and performed all other duties generally associated with that of an employer with regard to Plaintiff and the Class Members.

33.     Moreover, the following conduct demonstrates that the Plaintiff and the Class Members were employees:

    a.   Yellow Cab and Metro required Plaintiff and the Class Members to clock in and clock out at set times;

b.  Plaintiff and Class Members were paid a non-negotiable hourly rate, like employees;

c.  Plaintiff and the Class Members faced termination if they failed to perform their work in the manner required by Yellow Cab and Metro;

d.  Metro assigned Plaintiff and the Class Members the routes they were to follow each day;

e.  Yellow Cab and Metro required Plaintiff and the Class Members to request time off in advance and have that time away from work preapproved;

f.  Metro set forth the required procedures to be followed and the order and manner in which Plaintiff and the Class Members were to perform their work;

g.  Plaintiff and the Class Members a substantial number of hours of work per week;

h.  Plaintiff and the Class Members worked for Yellow Cab and Metro for years as is consistent with employees;

i.  Plaintiff's and the Class Members' services were integrated into Yellow Cab's Metro's operations;

j.  Plaintiff and the Class Members constituted the workforce without which Yellow Cab and Metro could not perform their services;

k.  Yellow Cab and Metro maintained the right to discharge Plaintiff and the Class Members at any time;

l.  Metro issued and required Plaintiff and Class Members to carry a Metrolift identification card; and

m.  Metro represented to the general public and its customers that Plaintiff and Class Members worked for Metro.

34.     Further, Plaintiff and the Class Members performed work that was integral to the operations of Yellow Cab and Metro.

35.     Furthermore, the degree of investment Plaintiff and the Class Members made to perform their work pales in comparison to the expenses Yellow Cab and Metro incurred.  Plaintiff and the Class Members were not required to supply any tools.  On the other hand, Yellow Cab and Metro provided Plaintiff and the Class Members with the equipment and vehicles for them to perform their work.

36.     Moreover, Yellow Cab and Metro supervised and controlled the activities of Plaintiff and the Class Members.

37.     Despite these facts, Yellow Cab and Metro improperly classified Plaintiff and the Class Members as independent contractors and not as employees.

38.     Yellow Cab and Metro misclassified the Plaintiff and Class Members as independent contractors to avoid their obligations to pay these employees overtime.

39.     However, at all times, Plaintiff and the Class Members were employees.

40.     Although Plaintiff and Class Members have been required to work more than forty (40) hours per work-week, and did so frequently, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek.

41.     Moreover, there were numerous unlawful deductions taken from the pay of the Plaintiff and Class Members.  Yellow Cab and Metro illegally attempted to pass on the cost of operating their business onto the Plaintiff and Class Members.  The pay of the Plaintiff's and Class Member's were deducted for a (1) deposit, (2) "service fee," (3) Mobile Data Terminal, (4) vehicle lease, (5) "corporate batch," (6) uniforms, and other unlawful deductions.  These deductions were not permitted in the law as they were primarily for the benefit of Yellow Cab and Metro.

42.     The regulations interpreting the FLSA provide that an employer must pay its employees the minimum wage and overtime wages "free and clear." *See* 29 C.F.R. § 531.35.  This regulation has been interpreted to mean that an employer cannot take a deduction or require an employee to incur business expenses that are primarily for the benefit of the employer. *See Marshall v. Krist Oil Co. Inc*., No. Civ. A. M76-74CA, 1979 WL 1906 (W.D. Mich. Apr. 23, 1979).

43. In particular, the "free and clear" regulation states as follows:

> The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any work week when the cost of such tools purchased by the employee **cuts into the <u>minimum</u> or <u>overtime wages</u> required to be paid him under the Act.**

*Id.* (emphasis added).

44.     The above citied regulation makes clear that business expenses incurred by a worker cannot "cut into" his overtime wages.  In other words, overtime wages (and minimum wages) must be paid to employees without any requirement that an employee incur any work related expenses on behalf of the employer's business. *Id.; see generally Mayhue's Super Liquor Stores, Inc. v. Hodges,* 464 F.2d 1196, 1197 (5th Cir. 1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688 (1973); *see also* Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter 2001-7, at 1 (Feb. 16, 2001).

45.     In Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter 2001-7, at page 1 (Feb. 16, 2001), the Department of Labor addressed this precise issue. *Id*.  The Department of Labor explained the issue as follows:

You request a formal opinion on whether it would be proper under the FLSA for an employer to deduct the cost of uniforms from an employee's wages in a week in which that employee works more than 40 hours, if the employer pays the employee overtime compensation computed at 1 ½ times the regular rate (before deductions are taken out) and if the deduction does not reduce the regular rate below the minimum wage required by the FLSA.

*Id*. at page 1.

46.     The Department of Labor then stated that "an employer may not lawfully require an employee to pay for an expense of the employer's business if doing so reduces the employee's pay below any statutorily-required minimum wage or **overtime premium pay**." *Id*. at page 1. Further, "[v]iolations occur in two ways:…(2) indirectly, when the employee must incur out-of-pocket expenses to buy the item and the employer fails to reimburse the employee for the outlay." *Id*.

47.     By taking such illegal deductions, Defendants have violated the FLSA.

48.     Additionally, Plaintiff and the Class Members were not compensated for all hours worked in the day.  There were significant hours for which Plaintiff and the Class Members worked but went uncompensated.

49.     While working for Defendants, Plaintiff interacted with and became familiar with the manner in which Defendants classified the Class Members and paid the Class Members. Therefore, Plaintiff has first-hand, personal knowledge of the same pay violations for the Class Members.

50.     Defendants' method of paying Plaintiff and the Class Members in violation of the FLSA was willful and was not based on a good faith and reasonable belief that their conduct complied with the FLSA. Defendants' misclassification was not by accident, but a well thought out scheme to reduce their labor costs.  Defendants knew the requirement to pay overtime to their

employees, but intentionally and/or recklessly chose not to do so.  Accordingly, the violations of the FLSA were willful.

51.     In fact, shortly after claims were brought against Yellow Cab and Metro, Yellow Cab began a concerted effort of retaliating against any current driver who brought a claim for overtime.  Yellow Cab employees, including Julie Saldana, directly threatened them and intimidated them for pursuing their claims.  Yellow Cab also reduced their hours and cut their pay. Yellow Cab has told any current driver that if they bring a claim for unpaid overtime wages, they will be punished by having their pay and hours of work reduced.

52.     Yellow Cab also began intentionally spreading false information and made multiple misrepresentations to the drivers.

53.     First, Yellow Cab distributed a notice that cut, copied, and pasted portions of a prior court order to make it appear that the drivers had no valid claim against Yellow Cab. *See* Exhibit "B."

54.     After that failed, Yellow Cab distributed a second notice misrepresenting the facts of this case and making direct threats against the drivers. *See* Exhibit "C."

55.     This intentional conduct has caused economic harm to the drivers and further demonstrates that Defendants' conduct was willful.

## **COUNT ONE: VIOLATION OF 29 U.S.C. § 207**

56.     Plaintiff incorporates the preceding paragraphs by reference.

57.     This count arises from Defendants' violation of the FLSA 29 U.S.C. 201, et seq., for their failure to pay Plaintiff and the Class Members their overtime pay for the time worked in excess of 40 hours in a workweek.

58.     For all hours worked in excess of 40 hours in a workweek, Plaintiff and the Class Members were entitled to be paid one and one-half times their regular rates of pay.

59.     Defendants violated the FLSA by failing to compensate Plaintiff and the Class Members consistent with the FLSA with respect to the amount of work actually performed over 40 hours per week.

60.     Plaintiff, on behalf of himself and the FLSA Class, also seeks reimbursement for any and all work related expenses incurred primarily for the benefit of Defendants.  Without reimbursement for these expenses in those weeks when they worked overtime hours, Plaintiff and the Class Members will not receive pay at time and one half their regular rate of pay for all hours worked over 40.

61.     Defendants' failure to pay overtime to Plaintiff and the Class Members, in violation of the FLSA, was willful and was not based on a good faith and reasonable belief that their conduct did not violate the FLSA.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

62.      Plaintiff will seek to certify Count I as a collective action and intends to recover all back wages, liquidated damages, penalties and prejudgment interest thereon due to Plaintiff and the other employees he represents.

63.      None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are paid are applicable to Defendants or Plaintiff/Class Members.

### COUNT TWO: FLSA RETALIATION

64.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

65.     Defendants began to take various actions in retaliation against the Plaintiff and Class Members for bringing overtime claims.

66.     The retaliatory acts include, but are not limited to the following:

a.   Cutting hours of work and reducing the pay of any person who brings a claim for overtime;

b.   Creating a hostile work environment for each person that joins this lawsuit;

c.   Threatening and harassing several of the drivers for joining this lawsuit.

67.     Defendants have threatened further retaliation against any other person that seeks to join this lawsuit.

68.     Plaintiff and Class Members have suffered and continue to suffer adverse employment action from Defendants that constitute direct acts of retaliation.

69.     All Plaintiffs and Class Members are protected from retaliation under the FLSA, which prohibits an employer from discharging or discriminating against any worker because the worker has filed a complaint against the employer. *See* 29 U.S.C. § 215(a)(3).

70.     A causal link exists between raising the claim for unpaid overtime and the retaliatory actions undertaken by Defendants. Defendants were aware that the present action and immediately thereafter engaged in the aforementioned retaliatory actions.

71.     Defendants' retaliatory motive caused the actions taken by Defendants.

72.     Plaintiff and Class Members have suffered damages as a result.

## **COLLECTIVE ACTION ALLEGATIONS**

73.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

74.     Plaintiff has actual knowledge that the Class Members have also been denied overtime pay for hours worked over forty (40) hours per workweek as a result of Defendants' misclassification of the drivers.

75.     Plaintiff's knowledge is based on his personal work experience and through communications with other drivers working for Defendants.

76.     Other workers similarly situated to the Plaintiff worked for Defendants but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty (40) hours per workweek because Defendants misclassified them as independent contractors.

77.     Although Defendants permitted and/or required the Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty (40).

78.     Defendants have classified and continue to classify the Class Members as independent contractors.

79.     The Class Members perform or have performed the same or similar work as Plaintiff and were misclassified as independent contractors by Defendants.

80.     The Class Members are not exempt from receiving overtime pay under the FLSA.

81.     As such, the Class Members are similar to Plaintiff in terms of relevant job duties, pay structure, misclassification as independent contractors and/or the denial of overtime pay.

82.     Defendants' failure to pay overtime compensation at the rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Class Members.

83.     The experiences of Plaintiff, with respect to his pay, hours, and duties are typical of the experiences of Class Members.

84.     The specific job titles or precise job responsibilities of each Class Member do not prevent collective treatment.

85.     All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

86.     Although the exact amount of damages may vary among Class Members, the damages for Class Members can be easily calculated by a simple formula. The claims of all Class Members arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Class Members.

87.     As such, the class of similarly situated workers is properly defined as follows:

> All current and former drivers who were paid on an hourly rate basis and were classified as independent contractors by Defendants at any time during the three-year period before the filing of this Complaint.

## **PRAYER**

88.     For these reasons, Plaintiff prays for:

a.   An order designating the FLSA Class as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to all Class Members;

b.   A judgment against Defendants awarding Plaintiff and the Class Members all their unpaid overtime compensation, work related expenses, and liquidated damages;

c.   An order awarding attorneys' fees, costs, and expenses;

d.   Pre- and post-judgment interest at the highest applicable rates; and

e.   Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

HODGES & FOTY, L.L.P.

By:  /s/ Don J. Foty
    Don J. Foty
    dfoty@hftrialfirm.com
    Fed. ID NO. 711522
    Texas Bar No. 24050022
    4409 Montrose Blvd., Suite 200
    Houston, TX 77006
    Telephone: (713) 523-0001
    Facsimile: (713) 523-1116

AND


THE FOLEY LAW FIRM

    Taft L. Foley, II
    Federal I.D. No. 2365112
    State Bar No. 24039890
    3003 South Loop West, Suite 108
    Houston, Texas 77054
    Phone: (832) 778-8182
    Facsimile: (832) 778-8353
    Taft.Foley@thefoleylawfirm.com

   ATTORNEYS FOR PLAINTIFF AND CLASS MEMBERS