Case 4:20-cv-00910 Document 94 Filed on 07/14/21 in TXSD Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
July 14, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL STERLING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-910 |
| | § | |
| GREATER HOUSTON TRANSPORTATION CO., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In March 2020, Paul Sterling, a driver in Houston's METROLift Transportation program, sued the Greater Transportation Company, Texas Paratransit, Inc., Yellow Cab Paratransit Services, Inc. (collectively "Yellow Cab"), and the Metropolitan Transit Authority of Harris County ("Metro"), on behalf of himself and similarly situated METROLift drivers. Sterling alleges that Yellow Cab and Metro misclassified him and others similarly situated as independent contractors instead of employees, denying them the overtime compensation due under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*. Sterling now seeks class certification of "all current and former drivers of the METROLift program who were classified as independent contractors for at least one week during the three-year period prior to the date the Court authorizes notice to the present."[1] (Docket Entry No. 77 at 2).

---

[1] The proposed class excludes "any drivers in the METROLift program who either (1) owned a taxi cab for use in the METROLift program during the entire three year period prior to the date the [c]ourt authorizes notice, or (2) who were under a lease to own program during the entire three year period prior to the date the [c]ourt authorizes notice." (*Id.*).

1

In May 2021, Sterling filed a motion to approve a stipulation he reached with Yellow Cab for certification, (Docket Entry No. 77), and a supplemental motion for certification under the FLSA, (Docket Entry No. 78).

**I.     Background**

Sterling first moved for class certification in September 2020. (Docket Entry No. 35). Yellow Cab and Metro opposed Sterling's motion. In January 2021, the Fifth Circuit announced a new framework for evaluating class certification under the FLSA in *Swales v. KLLM Transport Services, LLC,* 985 F.3d 430 (5th Cir. 2021). Yellow Cab sought, and this court ordered, supplemental briefing applying *Swales*. (Docket Entry Nos. 47, 50, 53, 59, 61). The court heard oral argument in February 2021 and ordered the parties to conduct limited deposition discovery to supplement the record on certification, and to file supplemental briefs. (Docket Entry No. 70). After precertification discovery, Sterling and Yellow Cab stipulated that class certification is appropriate under the FLSA. (Docket Entry No. 77). Sterling then supplemented his motion for class certification, Metro responded, and Sterling replied. (Docket Entry Nos. 78, 79, 83).

Sterling argues that the five witness depositions taken during the precertification discovery show that the potential class members are similarly situated, and class certification is appropriate under the FLSA and *Swales*. (Docket Entry No. 78 at 5). Metro responds that the court should deny class certification because the court has not granted summary judgment finding Metro to be the employer of the drivers, and because many of Sterling's claims about similar working conditions are disputed. (Docket Entry No. 79 at 6). Metro argues that the deposition testimony shows that the drivers are not similarly situated. (Docket Entry No. 87 at 7 (citing Docket Entry No. 79 at 7–20)). Metro cites deposition excerpts that it argues prove it did not have an employer-employee relationship with the drivers in the METROLift Program. Sterling responds that the

2

issue is not whether it will ultimately succeed on the merits of the employment status issue, but whether the court can decide the employee versus independent contractor issue on a class-wide basis. (Docket Entry No. 83 at 2).

## II.     The Legal Standard

For the hours worked over 40 hours in a week, the FLSA requires covered employers to pay nonexempt employees for overtime hours, at the overtime rate of one and one-half times their hourly rate. 29 U.S.C. § 207(a). Section 216(b) provides employees a cause of action against employers who violate § 207. Under § 216(b), employees may proceed in a collective action when they are "similarly situated." The Fifth Circuit recently rejected the approach used in *Lusardi v. Xerox Corporation*, 118 F.R.D. 351 (D.N.J. 1987), and provided new guidance for assessing whether potential collective action members in FLSA suits are "similarly situated." *Swales*, 985 F.3d 430.

In *Swales*, the Fifth Circuit explained that district courts should "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id*. at 439. Only then can the district court determine whether to conditionally certify and issue opt-in notice. *Id*. at 434. The court has discretion to order targeted discovery to determine whether to conditionally certify and issue notice to potential plaintiffs. *Id*. at 439. "The bottom line is that the district court has broad, litigation-management discretion [in class certification]." *Id*. at 443.

*Swales* implements two requirements relevant to determining whether to certify a collective action on a conditional basis and issue notice: "(1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those 'similarly situated' may proceed as a collective; and (2) the Supreme Court's admonition that while a district court may 'facilitate[e]

3

notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* at 434. "These are the only binding commands on district courts." *Id.* *Swales* emphasizes that those plaintiffs suing as representatives have the burden of demonstrating that the plaintiffs and the proposed opt-ins are similarly situated. *Id.* at 443 n.65.

When "the plaintiffs all have the same job description and the allegations revolve around the same aspect of that job," certification should be granted. *Id.* at 441–42. In *Swales*, the Fifth Circuit reaffirmed that certification depends on "whether merits questions can be answered collectively," and that the certification decision should be made "as early as possible." *Swales* at 441–42. There should be "[n]o judicial thumbs (or anvils) on the scale" related to the merits of the case at the certification stage. *Id.* at 436.

**III.   Analysis**

Metro's argument that certification is not appropriate under *Swales* until the court determines whether Metro employed the drivers is unpersuasive. The issue at this stage is not whether Sterling will ultimately prevail in proving all the elements of the alleged FLSA violation, including employment status, but whether the court can determine if the named plaintiffs and proposed class members are employees or independent contractors on a class-wide basis. *Miller v. Mackey Intern., Inc.*, 452 F.2d 424, 427 (5th Cir. 1971) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [class certification] are met.").

Sterling has sufficiently shown, on the current record, that the court can determine the relevant threshold issues on a class-wide, rather than, individualized, basis. Sterling points to driver deposition testimony showing that the drivers in the METROLift program all had the same job title, performed the same duties, were paid under the same compensation arrangements, wore

the same uniforms, followed the same policies and procedures, were subject to the same hiring requirements, completed the same training, were supervised in the same way, were subject to the same level of control, and were required to follow identical METROLift contracts. These contracts implement federal requirements for drivers and many of the provisions are required for compliance under federal law. (Docket Entry No. 78 at 14; Docket Entry No. 79 at 19).

While Metro disputes Sterling's allegations, it has not identified differences that require individualized proof or determination material to the employment status of the METROLift drivers. (Docket Entry No. 79). Metro argues that the drivers' deposition testimony highlights some differences in job duties. These differences include, driving a fixed route as opposed to flexible routes; and getting the job through application or through recruitment; wearing prescribed uniforms provided directly by Yellow Cab or wearing prescribed uniforms that the drivers obtain themselves. Metro also asserts differences in pay frequency; how hours worked were recorded; how vehicles were obtained; and who paid for vehicle insurance. (Docket Entry No. 87 at 7 (citing Docket Entry No. 79 at 7-20)). Metro fails to show that any or all of these differences mean that the drivers are not similarly situated with respect to whether they are Metro employees or independent contractors. Similar, immaterial differences are not disqualifications for finding employees who are similarly situated. *See Young v. Energy Drilling Co.*, No. Civ. A. 4:20-cv-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021) (despite having different job duties, certification of a class of hourly paid oil-field workers was appropriate because the workers were subject to the same pay practice); *see also Hernandez v. Pritchard Indus. (Southwest), LLC*, No. Civ. A 20-cv-0508, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021) (certifying a class of janitorial workers with different job titles, such as "working building supervisor," "general service worker," "general cleaner," and "janitor").

Sterling has shown that the potential members' claims center on the same facts and evidence as to whether the drivers are employees or independent contractors. *See T.S. v. The Burke Foundation*, No. Civ. A. 1:19-cv-809, 2021 WL 1807994 (W.D. Tex. Feb. 22, 2021) (class certification was appropriate because the central merits question could be resolved on a class-wide basis). The same is true here.

**IV.     Conclusion**

Sterling's motion for conditional class certification is granted. The court limits the class to:

All current and former drivers of the METROLift program who were classified as independent contractors for at least one week during the three year period prior to the date the court authorizes notice to the present. Excluded from this class are any drivers in the METROLift program who either (1) owned a taxi cab for use in the METROLift program during the entire three year period prior to the date the court authorizes notice, or (2) who were under a lease to own program during the entire three year period prior to the date the court authorizes notice.

SIGNED on July 14, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge