UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL STERLING on behalf of himself individually, and ALL OTHERS SIMILARLY SITUATED<br><br>    Plaintiff,<br><br>v.<br><br>GREATER HOUSTON TRANSPORTATION COMPANY, TEXAS PARATRANSIT, INC., YELLOW CAB PARATRANSIT SERVICES, INC. and METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY,<br><br>    Defendants. | §§§§§§§§§§§§§§§§§§ | CIVIL ACTION NO. 4:20-cv-00910 |

**UNOPPOSED MOTION FOR APPROVAL OF
FLSA COLLECTIVE ACTION SETTLEMENT**

Plaintiff Paul Sterling ("Sterling"), on behalf of himself and those individuals who have joined this case as opt-in plaintiffs (collectively, the "Class Members") respectfully move this Honorable Court to review the Parties' (hereinafter collectively, Sterling, the Class Members, and Metropolitan Transit Authority of Harris County, TX ("METRO") Settlement Agreement (the "Settlement") and to issue an Order approving the Settlement as fair and reasonable.

The proposed Settlement will resolve a *bona fide* dispute involving allegations of unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Sterling respectfully submits that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under section 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel. In support of the Settlement, Sterling respectfully states as follows.

1

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

A. **The Lawsuit**

On March 12, 2020, Sterling filed this lawsuit as a potential collective action under the FLSA on behalf of himself and other drivers in the METROLift Program. (Dkt. No. 1.) Sterling brought suit against the Metropolitan Transit Authority of Harris County, TX ("METRO") and various Yellow Cab entities (Greater Houston Transportation Company, Texas Paratransit, Inc., and Yellow Cab Paratransit Services, Inc. (collectively "Yellow Cab")). (*Id.*).

The METROLift program provides transportation to qualified disabled individuals. Indeed, "METROLift provides transportation for persons with disabilities who **cannot** board, ride or desembark from a METRO fixed-route bus."[1] To use the METROLift service, residents of Harris County contact METRO at least one day in advance to schedule a ride.[2] A driver is then dispatched to pick up the passenger at the scheduled time and to transport the passenger to his/her destination; destinations can include transportation to and from work, a medical appointment, a shopping trip, or other destinations.[3] "METROLift transports thousands of patrons each day."[4]

Sterling's central allegation in this lawsuit is that the Class Members were misclassified as independent contractors when they were really employees under the FLSA. (*See* Dkt. 1). As a result of this alleged misclassification, Sterling alleged that he and all other drivers were denied overtime wages when they worked more than 40 hours in a week. (*See id.*)

---

[1] Exhibit "1" - METROlift Brochure at 6.

[2] METROlift Brochure at 13.

[3] *See id.* at 7, 14.

[4] *Id*. at 6.

2

To determine if the Class Members were employees under the FLSA, courts apply the "economic reality" test. *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998). This test evaluates whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself. *Id*. The following five non-exhaustive factors guide the analysis when applying the economic reality test: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* No single factor is determinative. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043-44 (5th Cir. 1987). Instead, the inquiry is whether the worker is in business for himself or is dependent upon the purported employer. *Id*.

The Class Members contend that each of the factors under the economic realities test indicates that they were employees under the FLSA. In particular, the Class Members contend that METRO controlled the Class Members' routes, told them when and where to drive, and which passengers to transport. The Class Members further contend that METRO required the Class Members to report to work at set times and to follow specific policies and procedures. Finally, the Class Members maintain METRO supervised the work of the Plaintiff and Class Members and punished them if they failed to follow METRO's policies and procedures.

On the other hand, METRO avers that it is not liable to the Class Members for any alleged unpaid overtime wages or any other damages, including without limitation because it was not the employer of the Class Members, in light of the fact that, among other things, it did not hire the drivers in the METROLift program, pay them, or determine their rates of pay. Instead, the

METROLift drivers were hired by Yellow Cab, were classified as independent contractors by Yellow Cab, and were assigned to the METROLift account by Yellow Cab. METRO maintains that, if any company was the employer, it was Yellow Cab. METRO further contends that any evidence of its alleged "control" was not evidence of control that affected the terms and conditions of the Class Members' employment with Yellow Cab. *See Quintanilla v. A & R Demolition Inc.*, CIV.A. H-04-1965, 2006 WL 568308, at *2 (S.D. Tex. Mar. 6, 2006) (Rosenthal, J.) ("Even extensive supervision by a general contractor over a subcontractor's employees weighs in favor of joint employment only if it demonstrates effective control of the terms and conditions of the plaintiff's employment.").

### B.     Motions to Dismiss

After Sterling filed this lawsuit, METRO moved for an early dismissal. On July 24, 2020, METRO filed a Motion to Dismiss asking the Court to dismiss this case in favor of arbitration. (Dkt. 27). Prior to this lawsuit being filed, another driver in the METROLift program – Hubert Randle – filed a similar lawsuit. The Court dismissed the *Randle* lawsuit and ordered the parties to arbitration. However, after the *Randle* lawsuit was dismissed, the Fifth Circuit issued its decision in *Hiser v. NZone Guidance, LLC*, 799 Fed. Appx. 247 (5th Cir. Mar. 24, 2020). In *Hiser*, the Fifth Circuit held that the theory of direct benefits estoppel does not apply to claims raised under the FLSA stating: "Because the plaintiffs' overtime claims are based on a right conferred by federal law, the plaintiffs do not seek a benefit from their agreements with RigUp, and NZone could not compel arbitration under direct benefits estoppel." *Id*. at 248.

Additionally, Sterling and Yellow Cab agreed to void all arbitration clauses with the drivers in the METROLift program. On May 5, 2020, Sterling and Yellow Cab filed a joint stipulation stating to the Court that any and all arbitration agreements with the drivers in the METROLift

4

program have been voided. (Dkt. No. 14). Specifically, the stipulation stated: "[t]hat all provisions in all agreements between Yellow Cab and the Drivers requiring arbitration as the forum to resolve disputes have been **deleted and voided**." (*Id*. at pages 1-2) (emphasis added). After full briefing on METRO's Motion to Dismiss, the Court denied the motion on December 28, 2020. (Dkt. 44).

METRO then filed a second Motion to Dismiss on January 11, 2021. (Dkt. 46). The parties fully briefed the second Motion to Dismiss and the Court denied that motion on February 9, 2021. (Dkt. 60).

### C. Conditional Certification

On September 14, 2020, Sterling moved for conditional certification under the FLSA and asked the Court to approve a notice being sent to all drivers in the METROLift program pursuant to section 216(b) of the FLSA. (Dkt. 35). While Sterling's Motion for Conditional Certification was pending, the Fifth Circuit issued its decision in *Swales v. KLLM Transport. Servs., LLC*, 985 F. 3d 430 (5th Cir. 2021), which clarified the standard for certification under the FLSA in the Fifth Circuit. Sterling then filed a Supplemental Motion for Conditional Certification on January 29, 2021 discussing the application of *Swales*. (Dkt. 53). The Court then instructed the parties to engage in limited discovery regarding whether a collective action should be certified. (Dkt. 70). After that discovery was completed, Sterling filed a renewed Motion for Certification. (Dkt. 78). On July 14, 2021, the Court granted the Sterling's Motion and certified the following class:

> All current and former drivers of the METROLift program who were classified as independent contractors for at least one week during the three year period prior to the date the court authorizes notice to the present. Excluded from this class are any drivers in the METROLift program who either (1) owned a taxi cab for use in the METROLift program during the entire three year period prior to the date the court authorizes notice, or (2) who were under a lease to own program during the entire three year period prior to the date the court authorizes notice.

(Dkt. 94).

On August 16, 2021 and September 16, 2021, notice was sent to the Class Members. By agreement, notice was sent a third time on January 6, 2022. The deadline to opt-in has passed and to date 261 individuals have joined this case.

### D. Discovery and Yellow Cab Bankruptcy

During the discovery period, the parties completed written discovery, conducted five (5) depositions, submitted briefs on whether representative discovery was appropriate in this case, and the Class Members retained an accounting expert to calculate their estimation of potential damages.

Additionally, during discovery, Yellow Cab filed for bankruptcy and this case was stayed as to Yellow Cab. (Dkt. 99). METRO argued that this case should be stayed in light of the bankruptcy of Yellow Cab. (Dkt. 103). However, the Court did not find the stay applicable to METRO. (Dkt. 116).

### E. Negotiation of The Settlement

During the discovery period, the Parties exchanged significant information as to the claims of the Class Members and the defenses raised by METRO. Yellow Cab provided pay records, time records, mileage records, expense records, and emails during the relevant time period covered by this lawsuit. Using these records, the Parties calculated the potential damages they believed could be available to the Class Members if they were successful on their claims. The Parties discussed and disputed the applicable regular rate of pay as well as when the continuous workday began and ended. The Parties also discussed and disputed the method for calculating the potential damages. In addition to back pay, the Class Members argued that the work-related expenses incurred by the Class Members, such as gas, should be reimbursed by METRO. METRO

countered that the work-related expenses were not reimbursable unless they had the effect of lowering the Class Members' pay below the applicable minimum wage.

Given the competing factual and legal issues, the Parties agreed to discuss a potential settlement. The Parties attended mediation on November 19, 2021 with Eric Galton, a mediator experienced in resolving large FLSA collective actions. The Parties were not able to reach an agreement that day. However, with Mr. Galton's assistance, the Parties were able to reach a settlement on January 6, 2022. The final terms of the settlement are reflected in Exhibit "1."

### F. The Settlement Terms

If approved by the Court, the Settlement will cover Sterling and the 261 Class Members identified in Exhibit "A" to the Settlement. METRO has agreed to pay $4,875,000 to resolve this case. This is an average recovery of $18,606.87 per Class Member. There is no reversion of any unclaimed funds to METRO and each Class Member will be subject to release of wage and hour claims, rather than a general release of all imaginable claims. Further, the Settlement provides for payment to Class Counsel for attorneys' fees and reimbursement of costs incurred in litigating the case.

If approved by the Court, the lawsuit will be dismissed with prejudice and a settlement notice will be sent to the Class Members. A proposed notice of the Settlement has been drafted and is identified as Exhibit "B" to the Settlement.

### II. ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the

FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id., citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

Instead, most courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit). Settlements in the context of litigation where there are *bona fide* issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn Food*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

The Parties agree that the Settlement is fair and represents a reasonable compromise of the disputed issues in this case.

8

**A.   The terms of the Settlement provide for fair and reasonable compensation for the claims raised in the lawsuit.**

The Settlement is fair and reasonable and provides fair compensation to the Class Members. The Settlement provides for payment of $4,875,000.00 to the Class Members. This represents a more than fair and reasonable recovery for the claims raised in this lawsuit. In particular, Sterling calculated the potential unpaid overtime wages at $5,526,291.50 on the automatic two-year limitations period.[5] This was calculated based upon actual trip records showing the start time and end of the shifts worked by the METROLift drivers. The settlement amount is approximately 90% of the unpaid overtime wages on the two-year limitations period with an average per Class Member recovery of $18,606.87.

The recovery to the Class Members is more than reasonable and fair. *See Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving a settlement of 35% of the potential damages during the class period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (finding settlement in the range of 12.7% to 15.3% of potential damages reasonable); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since

---

[5] This calculation presumes that the Class Members were to prevail on its arguments related to the regular rate of pay and the start and end of the continuous workday. METRO strenuously disputed Sterling's method of damages calculation, as well as the resulting amount.

1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

The recovery reached in the Settlement is also more than reasonable and fair given that the Parties disagreed over the merits of the case. As noted above, the Parties vigorously disagreed as to whether the Class Members were employees or independent contractors and whether Class Members were employees of METRO. They also vehemently disagreed as to whether the Class Members could satisfy their burden to demonstrate that METRO acted willfully, which in turn affects whether the Class Members could recover damages for two (2) years or three (3) years prior to the filing of the Complaint. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether METRO would satisfy their burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case. Moreover, the Parties disagreed over the calculation of unpaid overtime wage damages and whether the work-related expenses were an additional measure of damages recoverable under the FLSA.

Additionally, the Settlement is significant given that Yellow Cab filed for bankruptcy. Throughout the litigation, METRO argued that if anyone was liable for failing to pay the METROLift drivers as employees it was Yellow Cab. METRO asserted that if anyone is responsible for all unpaid wages due to the Class Members it was Yellow Cab. However, Yellow Cab filed for bankruptcy requiring that Class Members' claims be subjugated to the claims of Yellow Cab's secured creditors, which adversely affected the Class Members' ability to recover their allegedly unpaid wages from Yellow Cab.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Class Members believe that the amounts reflected in the Settlement are in the best interest of the Class Members. More importantly, the Settlement allows the Parties to resolve the claims at

issue without the necessity or delay of trial and possible appeals. In exchange for these payments, the Class Members will agree to release METRO from any and all claims they may have related to any alleged unpaid wages. No claims against Yellow Cab have been released.

**B.      The proposed Settlement is the product of contested litigation.**

The Settlement reached in this case is a result of contested litigation. The factual allegations underlying this lawsuit have been pending, first in *Randle* and now in *Sterling,* for approximately four (4) years. During that time, the Parties analyzed the pertinent factual and legal issues and assessed the strengths and weaknesses of the claims and defenses at issue. During the lawsuit, the Parties strenuously disagreed over the merits of the case. Sterling argued that he and the Class Members were misclassified as independent contractors, and thus, denied their overtime wages when they worked more than 40 hours in a week. METRO countered that it was not liable to any of the Class Members for any alleged unpaid overtime wages, including without limitation because it did not employ these individuals within the meaning of the FLSA since, among other things, it did not hire the Class Members, pay the Class Members, or otherwise control the Class Members. The Court should now approve the Settlement because there is (1) a *bona fide* dispute between the Parties and (2) the Settlement is fair and reasonable.

**C.      The Settlement is fair and reasonable in light of the uncertainty of the outcome.**

The Settlement in this case is the result of years of hard-fought litigation. METRO filed two Motions to Dismiss, contested conditional certification at every stage, and argued throughout this case and still maintains that it is not liable. As a result of the litigation being hotly contested, the Settlement was reached through arms-length negotiations in effort to finally resolve the disputes between the Parties. The following additional factors demonstrate the reasonableness of the Settlement.

### i. There is no risk of fraud or collusion.

This Settlement was fairly and honestly negotiated. Class Counsel and METRO's counsel have extensive experience litigating FLSA claims, including claims for alleged unpaid overtime hours worked and alleged misclassification of workers as independent contractors. The Settlement was achieved only after arms-length and good faith negotiations between the Parties, occurring after significant discovery, and counsel for the Parties vigorously arguing their legal and factual positions.

### ii. This is a complex case that could last many years.

The policy favoring the settlement of wage and hour actions and other complex cases applies with particular force here. Employment cases in general, and a wage-and-hour case of this particular scale, are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of the Class Members' claims, as outlined earlier. If the litigation continued, the Class Members would have faced obstacles and uncertainties, including additional discovery, summary judgment, a trial, and an appeal.

Moreover, if forced to litigate this case further, the Parties will incur substantial expenses and fees in continuing discovery. Likewise, the Parties would incur substantial fees in further motion practice. By the time of trial, the Parties' attorneys' fees on each side are likely to be several millions of dollars, and costs exceeding six-figures.

In view of the costs, risks and delay of continued litigation balanced against the benefits of settlement, the Class Members believe the Settlement is in the best interests of the Class Members as it provides substantial relief to them promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution.

### iii. The Parties have engaged in sufficient relevant discovery.

The Parties have engaged in sufficient discovery prior to and during the settlement negotiations. The Parties completed written discovery and five (5) depositions. The Parties also reviewed data provided by Yellow Cab describing the Class Members' rates of pay, hours worked, and miles driven. The data was produced for both the two-year period and three-year period and allowed both sides to sufficiently evaluate the potential range of damages, if any. Further, the legal issues in the case were thoroughly researched and evaluated by Counsel for the Parties. All of aspects of the dispute are well-understood by both sides.

### iv. There is no guarantee of success on the merits.

The Parties recognize that the final outcome of the litigation is uncertain and that achieving a final result through the litigation and appeal process would require substantial additional risk, time and expense. METRO denies that it engaged in any unlawful or improper conduct including, expressly, all of the claims of the Class Members; denies all liability and damages of any kind to anyone regarding the Class Members' claims; and denies that this case could be litigated on a collective action basis. The Parties further dispute whether collective treatment of Sterling's FLSA claims is appropriate. Continued litigation could be risky for all Parties, and could result in appeals regardless of the outcome of the trial.

If this ligation continues, the Class Members face obstacles and uncertainties, including extensive and expensive discovery, and potential losses at the summary judgment phase, trial, or appeal. Unlike in a case involving an exemption from overtime where there is no dispute that the plaintiffs were employed by the defendant, here the Class Members bear the burden of proof in this case to establish that the METROLift drivers were employees of METRO. If the Class Members failed to meet this burden of proof, the protections under the FLSA do not apply. Thus, the Class Members face risk if this litigation continues.

### v. Counsel and the representative plaintiff support the Settlement.

The opinions of experienced counsel of the Parties support the Settlement, as does Sterling. The Settlement includes only Sterling and the individuals who have filed written consent forms to join the lawsuit and who agree to be bound by any settlement or judgment in this case. As such, there are no absent members to this Settlement and no risk to any individual that is not before the Court.

### vi. The Settlement distributions are fair, reasonable and adequate.

In reviewing an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)). In the present case, the Settlement provides for a settlement payment, after deduction of the service award to Sterling, attorneys' fees, and litigation costs, that will be divided into pro rata individual settlement payments to Class Members based on their individually alleged damages. The individually alleged damages were calculated based on the dates of employment for Class Members and actual hours and pay data Yellow Cab produced in discovery.

The Settlement allows each Class Member to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total damages available to all Class Members in the aggregate, net of service award, attorneys' fees and costs. That is, hypothetically, if a Class Member alleges they are owed $2,000 and the total damages sought by the entire class was $100,000, his proportionate share of the settlement is two percent (2%) and he will receive that percentage of the settlement proceeds after fees and costs have been deducted. The pro rata allocation to each Class Member is set forth on Exhibit B to the Settlement.

14

Moreover, there is no claims process or reversion of any unclaimed funds to METRO. Instead, each Class Member will receive a notice of the Settlement and a check representing his/her share of the Settlement. Additionally, the release of claims is limited to only wage and hour claims and is not a broad release of all imaginable claims. In light of these facts, the Settlement is fair and reasonable.

### C. The service award to the the representative plaintiff should be approved.

As part of the Settlement, a service award is being paid to Sterling in light of his efforts in this case. The proposed service award is proper and reasonable. Sterling provided factual information to Class Counsel and faithfully engaged in numerous and extensive calls and other communications with Class Counsel. Moreover, Sterling subjected himself to the responsibilities of serving as named plaintiff in a lawsuit against a company in the industry where he has worked for years. Also, the requested payment for Sterling is lower than that approved in other FLSA actions even though this case resulted in a substantial recovery for the Class Members. *See, e.g., Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award). In light of the efforts resulting in a settlement on behalf of the Class Members, the valuable contributions Sterling made throughout the litigation, Class Counsel submit that the service award is reasonable.

### D. Class Counsel's fees and costs are reasonable and should be approved.

The attorneys' fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).

Under this Settlement, the Class Members will receive direct cash payments representing a substantial recovery on their alleged damages. There is no initial claims process that can dramatically decrease participation in the Settlement. Instead, considering the risks of continued

15

litigation, the Settlement provides the Class Members almost 90% of the alleged owed overtime wages on the two-year period.

When evaluating a claim for fees, **a party's success in the litigation is the "most critical."** *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In determining the reasonableness of the requested attorney's fee, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is much higher. Under the Class Members' theory of the case, Class Counsel has prevailed in securing compensation for his clients. They acquired a settlement that provides recovery for each Class Member. Under METRO's theory, the Class Members would be owed zero.

Moreover, in the 2019 NERA study, the average wage and hour settlement on a per plaintiff basis was $1,412. (*See* Exhibit "2.") Here, the gross settlement on a per plaintiff basis is $18,606.87. After deducting for fees, costs, and service award, the net settlement on a per plaintiff basis is approximately $11,000.00. This recovery is substantial.

Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Class Members even had viable claims. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damage awards available to the Class Members in this case if they were successful on their claims. Thus, the work of Class Counsel provided a significant benefit to the Class Members.

It is also important to note that Class Counsel undertook the representation on a purely

contingent basis. Thus, Class Counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect of later dispositive motions or unfavorable outcomes at trial or appeal, that the investment of substantial attorney time and resources would be lost. Counsel should be compensated for this risk. *See, e.g.*, *Crosby v. Bowarter Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee").

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, METRO could have succeeded. Therefore, the Class Members were at great risk for non-payment, especially given the bankruptcy of Yellow Cab.

Attached hereto as Exhibit "3" is the Declaration of Don Foty. (Exhibit "3.") Class Counsel's requested fee, as stated in paragraph 10 of the Settlement, represents a fair and reasonable fee given their current lodestar. (*See id.*) Class Counsel engaged in discovery, which included serving written discovery, responding to written discovery, reviewing extensive records, taking five (5) depositions, engaging in extensive motion practice, and calculating the potential damages, amongst other activities. (*See id.*) Class Counsel's efforts helped secure a settlement that provides fair and reasonable value to the Class Members. (*See id.* ) It is important to note that Class Counsel's lodestar is likely to increase in the future. Class Counsel will spend time fulfilling their obligations in the Settlement, administering the Settlement, and responding to the Class Members inquiries. (*See id.*)

Additionally, the litigation costs and expenses sought are proper and reasonable. The litigation costs and expenses include the costs for filing the Complaint, taking depositions, mediation fee, expert fees, and copying and printing charges for the extensive records. (*See id.*) The costs and expenses incurred are reasonable and their reimbursement should be approved.

### E. The Settlement should be approved by the Court.

The terms of the Settlement have been approved by Plaintiff, Class Counsel, METRO, and METRO's counsel. The Settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement voluntarily and knowingly. The Parties agree that the terms of the Settlement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the Settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

After the Parties reached a general agreement regarding settlement, the Parties engaged in extensive negotiations concerning the specific terms of the Settlement and the scope of the release. The Settlement was ultimately approved and executed by the Parties as a result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations. Ultimately, there can be no question that this Settlement represents fair value for the Class Members. Each Class Member will receive payment for their alleged damages under federal law without the risk or expense of trial.

## CONCLUSION

For the reasons addressed above, Sterling respectfully requests that this Court approve the Settlement by entering the Proposed Order Approving Settlement and Dismissal with Prejudice.

Respectfully submitted,

HODGES & FOTY, L.L.P.

By: */s/ Don Foty*
Don J. Foty
DFoty@hftrialfirm.com
Texas Bar No. 24050022
4409 Montrose Blvd, Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

ATTORNEY FOR PLAINTIFF AND
CLASS MEMBERS

## CERTIFICATE OF SERVICE

This is to certify that on April 11, 2022 a copy of the foregoing instrument was served upon all parties via the Court's ECF.

*/s/ Don J. Foty*
Don J. Foty

## CERTIFICATE OF CONFERENCE

This is to certify that Plaintiff's Counsel has conferred with Counsel for Metro and Metro is unopposed to the relief sought in this Motion for Approval.

*/s/ Don J. Foty*
Don J. Foty