# EXHIBIT "1"

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| PAUL STERLING, on behalf of himself individually, and ALL OTHERS SIMILARLY SITUATED, | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civ. A. No. 4:20-cv-00910 |
| GREATER HOUSTON TRANSPORTATION COMPANY, TEXAS PARATRANSIT, INC., YELLOW CAB PARATRANSIT SERVICES, INC. and METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY, TX | § § § § § § § § § § | |
| *Defendants.* | § | |

**SETTLEMENT AGREEMENT AND RELEASE**

1.      This Settlement Agreement and Release (the "Agreement") is entered into between Plaintiff Paul Sterling ("Plaintiff"), on behalf of himself and all other individuals who have opted into this Fair Labor Standards Act ("FLSA") Collective Action ("FLSA Class Members"), Plaintiffs' Counsel and Metropolitan Transit Authority of Harris County, TX ("METRO") (the Plaintiff, Plaintiffs' Counsel, FLSA Class Members, and METRO are referred to collectively herein as the "Parties").

**RECITALS**

2.      Plaintiff, individually and on behalf of the FLSA Class Members (listed in Exhibit A), asserts that METRO failed to pay proper overtime wages under the FLSA in the case styled *Paul Sterling, Individually and For Others Similarly Situated v. Greater Houston Transportation Company, et al.*; Civ. A. No. 4:20-cv-00910; In the United States District Court for the Southern District of Texas, Houston Division (the "Action").

3.      METRO denies all the allegations against it and denies that it is liable for damages to anyone with respect to the causes of action asserted in the Action.

4.      As a result of the Parties' arms-length negotiations, which included data needed by Parties to assess the claims, the Parties have agreed to settle this Action according to the terms of this Agreement.

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

5.      Plaintiffs' Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in the Action. In agreeing to this Agreement, Plaintiffs' Counsel has considered: (a) the facts developed during the Parties' litigation and settlement negotiations and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against METRO; and (c) the desirability of consummating this Agreement according to the terms of this Agreement. Plaintiff and Plaintiffs' Counsel have concluded that the terms of this negotiated settlement are fair, reasonable and adequate, and that it is in the best interests of Plaintiff and the FLSA Class Members to settle their claims against METRO pursuant to the terms set forth herein.

6.      METRO denies the allegations in this Action and denies that it engaged in any wrongdoing or violation of law. METRO is entering into this Agreement because it will eliminate the burden, risk and expense of further litigation. Neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession or indication by or against METRO of any fault, wrongdoing or liability whatsoever, including any concession that certification of a class other than for purposes of this settlement would be appropriate in the Action or any other case.

7.      The Parties stipulate and agree that, for settlement purposes only, the group attached hereto as Exhibit A are the FLSA Class Members.

8.      In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that Plaintiff's and the FLSA Class Members' claims in the Action against METRO shall be settled, compromised and dismissed, on the merits and with prejudice as to METRO, and that the Released Claims (as defined below) shall be finally and fully compromised, settled and dismissed as to the Released Parties (as defined below), in the manner and upon the terms and conditions set forth below. Nothing herein releases any claims as to any other entity or persons other than the Released Parties.

## TERMS OF SETTLEMENT

9.      **Joint Motion for Approval of Settlement and Dismissal with Prejudice.** Within ten (10) business days of the Parties' execution of this Agreement, the Parties will file a Joint Motion for Approval of Settlement and Dismissal with Prejudice, requesting that the Court approve this Agreement and dismiss Plaintiff's and the FLSA Class Members' claims with prejudice. The Court shall retain jurisdiction to enforce the terms of the settlement. In the event this Agreement is not approved by the Court, the Parties shall work together in good faith to structure a settlement that will meet the Court's approval.  In the event they are unable to draft a settlement that meets the Court's approval, this Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement. The settlement payment shall remain property of METRO, and the Parties' litigation positions will revert to the status quo ante before execution of this Agreement with no waiver, in any way, of their claims or defenses in this Action, including, but not limited to, defenses to the merits of Plaintiff's and the FLSA Class Members' claims and to collective action treatment.

10.    **Settlement Amount**

    a.  **Gross Settlement Amount.** Gross Settlement Amount is Four Million Eight Hundred Seventy-Five Thousand Dollars and Zero Cents ($4,875,000.00). The Gross Settlement Amount is comprised of: (1) Net Settlement Amount; (2) Attorneys' Fees, Costs and Expenses; (3) Named Plaintiff's Service Award; and (4) Third Party Settlement Administrator Costs. The Gross Settlement Amount does not include the employer's employment taxes, which METRO will pay in addition to the Gross Settlement Amount.

    b.  **Approval for Payment of Attorneys' Fees, Costs and Expenses**. Plaintiffs' Counsel will seek, and METRO will not oppose, approval of $1,950,000 in requested Attorneys' Fees and an additional amount of $75,834.06 for Costs and Expenses.

    c.  **Approval for Named Plaintiff's Service Award.** Plaintiffs' counsel will seek, and METRO will not oppose, approval of $10,000 for the Named Plaintiff's Service Award. This payment shall be for alleged non-wage damages, for which an IRS Form 1099 shall issue.

    d.  **Third Party Settlement Administrator Costs.** The Parties agree that the cost of the third party administrator to facilitate and distribute payment to Plaintiff and FLSA Class Members shall not exceed $15,000, half of which shall be paid by METRO and the other half shall be paid from the Gross Settlement Amount. The Parties agree that the Settlement Administrator in this case shall be: ILYM Group, Inc., 14771 Plaza Dr., Ste L, Tustin, CA 92781.

    e.  **Net Settlement Amount.** Net Settlement Amount shall be the Gross Settlement Amount less the amounts actually approved by the Court for Attorneys' Fees, Costs and Expenses, Named Plaintiff's pro rata Individual Settlement Payment and Named Plaintiff's Service Award, and Third Party Settlement Administrator Costs. Net Settlement Amount shall be distributed to FLSA Class Members in an equitable manner on a pro rata basis as set forth in Exhibit A. Payments to the FLSA Class Members shall be apportioned as 50% for alleged lost wages, less applicable employee-side withholdings and/or deductions for federal income, social security, and Medicare taxes, for which an IRS Form W-2 shall issue, and 50% alleged non-wage damages, for which an IRS Form 1099 shall issue.

11.    **Payment by METRO.**

    a.  **Deposit of Funds with Settlement Administrator.** No later than 14 days following the entry of the Approval Order, METRO shall wire or mail the Net Settlement Amount and Third Party Settlement Administrator Costs to the Settlement Administrator. Upon receipt by the Settlement Administrator, these funds shall be transferred immediately to a Qualified Settlement Fund satisfying the requirements of Treasury Regulation Section 1.468B-1

b. **Disbursement by Settlement Administrator.** All disbursements shall be made from the Qualified Settlement Fund. The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Qualified Settlement Fund. The interest on the funds deposited by METRO will inure pro rata to the FLSA Class Member to whom the underlying funds are ultimately paid out. The Settlement Administrator shall disburse the Net Settlement Amount on or before the later of: (1) 30 days following the entry of the Approval Order, or (2) 14 days following receipt of an IRS Form W-9 and W-4 from each individual FLSA Class Member. Disbursement dates shall be determined on a Class Member by Class Member basis.

c. **Other Payments.** No later than 30 days following the entry of the Court's Approval Order, METRO shall wire or mail the Attorneys' Fees, Costs and Expenses and Named Plaintiff's pro rata Individual Settlement Payment and Named Plaintiff's Service Award in the amounts ultimately approved by the Court to Hodges & Foty, LLP, 4409 Montrose Blvd., Suite 200, Houston TX 77006, provided that Carolyn Russell, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., One Allen Center, Suite 3000, 500 Dallas Street, Houston, TX 77002-4709 ("METRO's Counsel") has received from Plaintiff's Counsel and Named Plaintiff a completed IRS Form W-9 and Named Plaintiff has executed this General Release.

12.    **Release.** The FLSA Class Members shall be deemed to have released and forever discharged any and all claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against Released Parties for alleged unpaid wages, overtime wages, liquidated or other damages, unpaid costs, unlawful deductions (including failure to pay wages "free and clear"), penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the FLSA or any other federal, state, or local wage-related law, including contract law, from the time they began driving in the METROLift program through the date of the Court's Final Approval Order. For purposes of informing FLSA Class Members of their release of claims, the following release language shall be included on each settlement check to each FLSA Class Member:

**FINAL RELEASE OF WAGE AND HOUR CLAIMS:**
By signing this check, I, on my own behalf and on behalf of my agents, representatives, attorneys, heirs, administrators, executors, successors, and assigns, accept and agree to all the terms of the Settlement Agreement between Plaintiff, individually and on behalf of all FLSA Class Members, and Metropolitan Transit Authority of Harris County, TX ("METRO"), including but not limited to my release any and all claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against Released Parties (as defined in the Settlement Agreement) for alleged unpaid wages, overtime wages, liquidated or other damages, unpaid costs, unlawful deductions (including failure to pay wages

4

"free and clear"), penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the FLSA or any other federal, state, or local wage-related law, including contract law, from the time I began driving in the METROLift program through the date of the Court's Final Approval Order. I further represent and warrant that I have not assigned or transferred my claim. In the event that any claim, demand, or suit should be made or instituted against METRO because of any such purported assignment, subrogation, or transfer, I agree to indemnify and hold METRO harmless against such claim, suit, or demand and to pay and satisfy any such claim, suit, or demand, including necessary expenses of investigation, actual attorneys' fees, and costs.

For each individual listed in Exhibit C, the release language on the backs of their settlement checks shall NOT include the following language: "I further represent and warrant that I have not assigned or transferred my claim. In the event that any claim, demand, or suit should be made or instituted against METRO because of any such purported assignment, subrogation, or transfer, I agree to indemnify and hold METRO harmless against such claim, suit, or demand and to pay and satisfy any such claim, suit, or demand, including necessary expenses of investigation, actual attorneys' fees, and costs."

Further, the settlement checks for each individual listed in Exhibit C shall be sent directly to Plaintiffs' Counsel, Hodges & Foty, LLP, 4409 Montrose Blvd., Suite 200, Houston TX 77006. The settlement checks for each individual listed in Exhibit C shall be made payable jointly to "Hodges & Foty, LLP and [the name of the Plaintiff listed in Exhibit C]," and Plaintiff's Counsel shall ensure that the security interests are satisfied.

13. **Released Parties**. The Parties agree that the Released Parties are: Metropolitan Transit Authority of Harris County, TX and all of its current or former parent companies, subsidiary companies, and/or related, affiliated, or predecessor companies, partnerships, and/or joint ventures, and, with respect to each of them, all of its past, present, and future employees, officers, partners, principals, directors, stockholders, owners, representatives, assigns, attorneys, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), and any other persons acting by, through, under, or in concert with any of the persons or entities listed in this subsection, and their successors. Except that Released Parties shall **not** include: Greater Houston Transportation Company, Texas Paratransit, Inc., or Yellow Cab Paratransit Services Inc.

14. Named Plaintiff's General Release: This release applies to Named Plaintiff Paul Sterling only and in his individual capacity.  Paul Sterling does, for himself and heirs, executors, administrators, and assigns hereby **RELEASES and FOREVER DISCHARGES** Released Parties (as defined in the Settlement Agreement) from any and all damages, claims, demands, causes of action, charges, allegations, petitions, appeals, pleas, challenges, hearings, trials, judgments and executions of any and every kind or description whatsoever, at law and/or in equity,

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

including any claim for attorneys' fees, which Paul Sterling ever had, claims to have had, or may now have, whether known or unknown, vested, contingent, executory, or otherwise. This Release expressly includes, but is not limited to any claims Paul Sterling might have under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, 42 U.S.C. § 1981, the Fair Labor Standards Act, the Employee Retirement Income Security Act of 1974, the Occupational Safety and Health Act, as amended, the Texas Commission on Human Rights Act, the Texas Labor Code, including Chapter 451; any other state or federal statute; or any other claim in tort or contract that arises out of or relates to Paul Sterling's alleged employment/work relationship with METRO, **including but not limited to and any and all claims the Undersigned might have for negligence**. Paul Sterling agrees that neither he nor anyone on his behalf will file any additional claim or suit against Released Parties with any state or federal administrative agency or in any court based upon any events occurring prior to the date of execution of this Release.

Nothing in this Agreement shall be interpreted or applied in a manner that affects or limits Paul Sterling's otherwise lawful ability to bring an administrative charge with the Equal Employment Opportunity Commission ("EEOC") or other appropriate federal, state, or local administrative agency. However, Released Parties and Paul Sterling agree that Paul Sterling has released Released Parties from any and all liability arising from the laws, statutes, and common law listed above. As such, Paul Sterling is not and will not be entitled to any monetary or other comparable relief on Paul Sterling's behalf resulting from any proceeding brought by Paul Sterling, the EEOC, or any other person or entity, including but not limited to any federal, state, or local agency. Paul Sterling agrees, promises and covenants that neither they, nor any person, organization, or other entity claiming by, through or under them, have or will file, charge, claim, sue, or cause or permit to be filed, charged or claimed, any action for damages or other relief (including injunctive, declaratory, monetary relief or other) against Released Parties involving any matter occurring in the past up to the date of this Release, or involving and based upon any claims, demands, causes of action, obligations, damages or liabilities which are the subject of this Release, nor will they, to the extent permitted by applicable law and regulations, directly or indirectly, advise, assist, or aid, any third party in investigating, filing or prosecuting any claim or suit, of any kind or for any alleged injury, against Released Parties, unless compelled by subpoena or court order.

Nothing in this General Release shall apply to a claim against Yellow Cab Houston, Greater Houston Transportation Company, Texas Paratransit, Inc., Yellow Cab Paratransit Services, Inc., or any other affiliated Yellow Cab entity or shall apply to a claim for damages arising out of personal injuries.

14.   **Undeposited Checks or Failure to Provide Tax Forms.** In the event that the Settlement Administrator is unable to distribute any funds by September 1, 2022 because a FLSA Class Member does not cash or deposit the check containing the release language, the Settlement Administrator shall transfer the remaining unclaimed funds to the IOLTA account of Hodges & Foty, LLP. If prior to the expiration of the statute of limitations, any such FLSA Class Member seeks his/her settlement funds, Hodges & Foty, LLP may release the settlement funds to the individual Class Members with the pre-approved written consent of METRO's Counsel provided

that METRO's Counsel receives an executed release for the claims listed in Section 12. The Parties agree that the statute of limitations shall expire no later than April 1, 2025. Once the statute of limitations has expired, any remaining unclaimed funds shall be deposited in the Texas unclaimed funds registry for the benefit of that Class Member.

15.   **Taxes and Indemnification.** For tax reporting purposes, METRO, or as applicable the Settlement Administrator, shall report all settlement payments made to FLSA Class Members as 50% alleged lost wages, less applicable withholdings and/or deductions for federal income, social security, and Medicare taxes, for which an IRS Form W-2 shall issue, and 50% alleged non-wage damages, for which an IRS Form 1099 shall issue. FLSA Class Members will be responsible for reporting such amounts on their tax returns as applicable and paying any applicable taxes on such amounts. FLSA Class Members agree to indemnify and hold METRO harmless from any and all liability that may result from, or arise in connection with, their failure to file and pay such taxes on any amounts received pursuant to this Agreement, except that METRO shall be responsible for the employer portion of any payroll taxes. The amount of the indemnity shall be limited to the amount of consideration paid by METRO.

16.   **Confidentiality of Counsel.** Plaintiffs' Counsel agrees that they shall not undertake any effort to communicate in or to any third-party or media or news outlet, on the Internet, on any social media platform, with any other form of mass communication, or otherwise assist with, aid in, or encourage any dissemination of information related to the Action, settlement, and the negotiation and terms of this Agreement, for a period of 180 days except as required for purposes of Court approval, communication directly to an FLSA Class Member, or if compelled by a court order or subpoena. METRO has all rights and remedies under the law to enforce this provision.

## REPRESENTATIONS AND WARRANTIES

17.   **Authority.** The signatories below represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto (including FLSA Class Members) to the terms and conditions hereof.

18.   **No Admission of Liability.** This Agreement is the result of a compromise of disputed claims and shall never at any time for any purpose be considered as an admission of correctness, liability, or responsibility on the part of any party. The Parties agree that they will never seek to introduce this Agreement as evidence of an admission of liability or an admission of any violation of any federal, state or local laws. Plaintiff and FLSA Class Members further acknowledge that through this Agreement, METRO will not be deemed to admit or concede that it employed Plaintiff or FLSA Class Members, that collective action treatment is or was appropriate, Plaintiff's or FLSA Class Members' claims have any merit. Rather, METRO has denied and continues to deny, specifically and generally, the claims asserted in the Action and any and all liability or wrongdoing of any kind whatsoever associated with the facts or claims alleged in this Action, including that continued collective action treatment is appropriate.

19.   **Advice of Legal Counsel.** The advice of legal counsel has been obtained by all of the Parties prior to the execution of this Agreement. All of the Parties hereby execute this Agreement voluntarily and with full knowledge of its significance and with the express

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

intention of extinguishing any and all obligations and claims owed by the Parties to each other arising out of or connected with the matters specified herein. All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

20.   **Non-Assignment of Claims.** Each FLSA Class Member represents and warrants that no portion of any claim, right, demand, action, or cause of action which s/he has or might have arising out of the matters referred to herein, nor any portion of any recovery or settlement to which s/he might be entitled, has been assigned or transferred to any other person, firm, or corporation not a party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise. In the event that any claim, demand, or suit should be made or instituted against any of the Parties because of any such purported assignment, subrogation, or transfer, the other party agrees to indemnify and hold harmless the party subject to such an action against such claim, suit, or demand and to pay and satisfy any such claim, suit, or demand, including necessary expenses of investigation, actual attorneys' fees, and costs. However, prior to seeking indemnity, the Party shall present the claim to the other Party to resolve or provide a defense. It is also agreed that the amount of the indemnity shall be limited to the amount of consideration paid to the affected FLSA Class Member.  Except for the FLSA Class Members listed on Exhibit C, Plaintiffs' Counsel represents and warrants that they are not aware of any such assignment.

21.   **Adequate Investigation of Facts.** In making and executing this Agreement, the Parties have made such investigation of the facts and the law pertaining to the matters described herein and this Agreement as they deem necessary, and they do not rely and have not relied upon any statement or representation, oral or written, made by any of the other Parties to this Agreement with regard to any of the facts involved in any dispute or possible dispute between any of the Parties hereto, or with regard to any of their rights or asserted rights, or with regard to the advisability of making and executing this Agreement.

22.   **Assumption of Risk of Mistake.** The Parties hereby expressly assume the risk of any mistake of fact or that the true facts might be other or different from facts now known or believed to exist, and it is the express intention of the Parties to forever settle, adjust, and compromise the disputes raised by the Action without regard to who may or may not have been correct in their respective understandings of the facts or the laws relating thereto.

23.   **Understanding Of Agreement.** Each of the Parties has read and understands the contents of this Agreement and, if necessary, has had the same translated to ensure the same.

24.   **Binding Upon Agents and Representatives.** Each and every term of this Agreement shall be binding upon the agents, representatives, insurers, employees, attorneys, heirs, administrators, executors, successors, and assigns of the respective Parties hereto and any parent, subsidiary, or affiliated entity of such Parties.

25.   **Integration.** This Agreement constitutes the entire agreement between Plaintiff and the FLSA Class Members, on the one hand, and METRO, on the other hand, pertaining to the subject matter hereof, and further constitutes the final, complete, and exclusive expression of the terms and conditions of their agreement. Any and all prior agreements (including the

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

Memorandum of Understanding and Settlement Term Sheet executed on January 6, 2022), representations, negotiations, and understandings, oral or written, express or implied, are hereby merged herein.

26. **Cooperation**. The Parties hereto agree to execute any and all other documents and instruments in writing which may be reasonably necessary or proper to effectuate and carry out the purposes of this Agreement.

27. **Attorneys' Fees**. In the event that any of the Parties hereto should bring any action, suit, or proceeding against any of the other Parties hereto to enforce this Agreement, the validity hereof, any of the terms or provisions hereof, or any of the matters released hereby, or should any of the Parties assert this Agreement as an affirmative defense in an action brought by the other party, the prevailing party in such action, suit, or proceeding shall be entitled to recover from the other such party reasonable attorneys' fees to be fixed by the court and costs incurred in connection therewith, including attorneys' fees and costs relating to any and all appeals or petitions taken with respect to any such action, suit, or proceeding.

28. **Modifications In Writing**. The Parties agree that any modifications to this Agreement must be made in writing and are subject to the approval of the Chair of METRO's Board of Directors and subject to METRO's Contracting Approval and Execution Requirements as prescribed by law.

29. **Cooperation for Settlement Approval**. The Parties agree to work diligently together to file and submit all documentation and information necessary to the Court for purposes of obtaining approval of this Agreement and dismissal of the Action.

30. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

31. **Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same written Agreement.

32. **Plaintiffs' Counsel**. Plaintiffs' Counsel as the term is used in this Agreement shall mean Don Foty, the law firm Hodges & Foty, L.L.P., Taft L. Foley, II, the law firm The Foley Law Firm, and all of their partners, members, attorneys, staff, employees, and agents.

33. **Construction**. Plaintiff, on the one hand, and METRO, on the other hand, through their counsel, participated in the drafting of this Agreement, and they agree that any rule of construction that agreements are to be construed adverse to the drafter shall not apply herein, including the captions. Should any provisions of this Agreement be declared or determined by a court or arbitrator to be illegal or invalid, the validity of the remaining terms shall not be affected thereby.

34. **No Waiver**. No waiver of any breach of any term or provision of this Agreement shall be, or shall be construed to be, a waiver of any other breach of this Agreement. No waiver

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

shall be binding under this Agreement unless in writing and signed by the party waiving the breach, and for METRO subject to the approval of the Chair of METRO's Board of Directors and subject to METRO's Contracting Approval and Execution Requirements as prescribed by law.

35.     **Severability**. If any provision of this Agreement is found by a proper authority to be unenforceable, that provision shall be severed and the remainder of the Agreement will remain in full force and effect.

36.     **Computation of Time.** For purposes of this Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time period shall be continued to the following business day.

37.     **Non-Disparagement and No Encouragement of Claims.** Plaintiff agrees that he will not defame or disparage METRO or any of the Released Parties, or any of their affiliates or subsidiaries, or any of their products or services, and/or any of their past or present shareholders, officers, directors, board members, employees, or agents, by means of Facebook or any other social media outlet. Plaintiff further covenants that he shall not in any way encourage or assist any person or entity (including, but not limited to, any other current or former independent contractor or employee of METRO) to take any legal or administrative action against any of the Released Parties, except as otherwise permitted by law.  METRO agrees that to the extent any current or future employer of Plaintiff or any Class Member makes an inquiry to METRO, METRO will direct the inquirer to contact Yellow Cab Houston and will make no further comment about the Plaintiff or Class Member.

38.     **Approval by METRO.** Plaintiff, Plaintiffs' Counsel and the FLSA Class Members understand and agree that METRO's approval of this Agreement or any agreement is subject to the approval of the Chair of METRO's Board of Directors and subject to METRO's Contracting Approval and Execution Requirements as prescribed by law.

**PLAINTIFF AND METRO ACKNOWLEDGE AND AGREE THAT THEY HAVE READ THIS AGREEMENT (INCLUDING THE ATTACHED EXHIBITS), HAVE HAD THE OPPORTUNITY TO DISCUSS THE CONTENTS OF THIS AGREEMENT WITH THEIR COUNSEL AND HAVE DONE SO, THAT THEY HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY, AND THAT THEY HAVE HAD THE OPPORTUNITY TO HAVE THE AGREEMENT TRANSLATED TO THE EXTENT HE DEEMS NECESSARY AND FULLY UNDERSTAND IT.**

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Confidential Settlement Agreement and Release as follows:

**[Signatures on the following page]**

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

**PLAINTIFF, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED:**

Paul Sterling
_____
Paul Sterling
Date: 3/21/2022

Donny Foty
_____
Don Foty (Plaintiffs' Counsel)
Date: 3/21/2022

Taft Foley
_____
Taft L. Foley (Plaintiffs' Counsel)
Date: 3/21/2022

**DEFENDANT:**

_____
On Behalf of METRO
Date: 3/24, 2022

Printed Name: Thomas C. Lambert
Title: President & CEO

Carolyn Russell
_____
Carolyn Russell (Metro's Counsel)
Date: March 29, 2022

11

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

# Exhibit A
# Class List and Settlement Allocations

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

| NAME OF PLAINTIFF | SETTLEMENT AMOUNT | SERVICE AWARD | TOTAL AMOUNT |
|---|---|---|---|
| Abdin, Asia | $1,002.59 | | $1,002.59 |
| Abraham, Bona | $701.81 | | $701.81 |
| Adekunle, Abayomi | $13,935.99 | | $13,935.99 |
| Adewusi, Allegra | $13,935.99 | | $13,935.99 |
| Afolayan-bes, Sunkanmi | $13,477.66 | | $13,477.66 |
| Agboola, Mutiu | $14,551.87 | | $14,551.87 |
| Akinyele, Folorunso | $8,822.78 | | $8,822.78 |
| Alabi, Talwo | $13,950.31 | | $13,950.31 |
| Aljbor, Naser | $14,695.09 | | $14,695.09 |
| Allen, Latasha | $10,126.15 | | $10,126.15 |
| Anim, Isaac | $13,219.85 | | $13,219.85 |
| Animashaun, Taju | $8,722.53 | | $8,722.53 |
| Are, Tajudeen | $8,722.53 | | $8,722.53 |
| Arvie, Leticia | $13,305.79 | | $13,305.79 |
| Ary, Diane | $13,606.57 | | $13,606.57 |
| Asfaw, Dereje | $13,935.99 | | $13,935.99 |
| Ayele, Benyam | $14,695.09 | | $14,695.09 |
| Azua, Salvador | $14,136.51 | | $14,136.51 |
| Babalola, Samuel | $7,820.20 | | $7,820.20 |
| Bademosi, Bukola | $6,717.35 | | $6,717.35 |
| Baker, Sherrie | $8,092.33 | | $8,092.33 |
| Baloch, Jan | $6,617.09 | | $6,617.09 |
| Bass, Shannon | $14,637.80 | | $14,637.80 |
| Bean, Jermaine | $14,551.87 | | $14,551.87 |
| Beaudion, Lateashia | $3,308.54 | | $3,308.54 |
| Bell, Jeanetta | $20,309.59 | | $20,309.59 |
| Bell, Titianna | $13,534.95 | | $13,534.95 |
| Benning, Beverly | $9,438.66 | | $9,438.66 |
| Bird, Shelah | $12,947.72 | | $12,947.72 |
| Bolton, Eureka | $13,434.70 | | $13,434.70 |
| Bouamran, Adil | $14,738.06 | | $14,738.06 |
| Boudreaux, Jr., Aaron | $13,606.57 | | $13,606.57 |
| Brewer, Jerry | $6,516.83 | | $6,516.83 |
| Brooks, Latricia | $19,163.78 | | $19,163.78 |
| Brooks, Veronica | $14,236.77 | | $14,236.77 |
| Brown, Michael | $3,294.22 | | $3,294.22 |
| Bryant, Patasha | $13,377.40 | | $13,377.40 |
| Burjak, Naser | $5,614.50 | | $5,614.50 |
| Burleson, Tammy | $14,036.25 | | $14,036.25 |
| Burnett, Cassandra | $13,935.99 | | $13,935.99 |
| Caldwell, Ray | $13,935.99 | | $13,935.99 |
| Carr, James | $14,136.51 | | $14,136.51 |
| Carr, Tonia | $14,437.28 | | $14,437.28 |
| Carson, Tammi | $9,796.73 | | $9,796.73 |
| Carter, Doneisha | $9,624.86 | | $9,624.86 |
| Castille, Chloe | $902.33 | | $902.33 |
| Chance, Ashley | $20,309.59 | | $20,309.59 |
| Chism, Noeme | $7,820.20 | | $7,820.20 |
| Clay, Talya | $13,033.66 | | $13,033.66 |
| Collier, Anthony | $2,850.22 | | $2,850.22 |
| Conley, Angela | $4,812.43 | | $4,812.43 |
| Crosby, Eboni | $9,410.02 | | $9,410.02 |
| Davis, Mark G. | $22,758.77 | | $22,758.77 |
| Davis, Santori | $15,024.51 | | $15,024.51 |
| Dees, Mary C. | $16,972.40 | | $16,972.40 |
| Del Carmen Lopez, Maria | $14,337.03 | | $14,337.03 |
| Demessie, Sara | $14,666.45 | | $14,666.45 |
| Dennis, Tanesha | $17,745.83 | | $17,745.83 |
| Dillard, Elizabeth | $20,309.59 | | $20,309.59 |
| Dotson, Allison | $13,434.70 | | $13,434.70 |
| Douglas, Shermain | $250.00 | | $250.00 |
| Downing, Sheila A. | $16,915.11 | | $16,915.11 |
| Draper, Pamela | $20,753.60 | | $20,753.60 |
| Dubois, Anaya | $14,379.99 | | $14,379.99 |
| Dunbar, Deutrice | $2,850.22 | | $2,850.22 |

| | |
|---|---|
| Total Settlement | $4,875,000.00 |
| Fees | $1,950,000.00 |
| Expenses | $75,834.06 |
| Service Award | $10,000.00 |
| Net to Class | $2,839,165.94 |

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

| NAME OF PLAINTIFF | SETTLEMENT AMOUNT | SERVICE AWARD | TOTAL AMOUNT |
|---|---|---|---|
| Dunstan, Jenny | $7,719.94 | | $7,719.94 |
| Edens, Janella | $14,551.87 | | $14,551.87 |
| Emam, Mohamed | $12,732.88 | | $12,732.88 |
| Essien, Rosemary | $12,632.62 | | $12,632.62 |
| Etim, Anthony | $12,732.88 | | $12,732.88 |
| Evans, Veronica | $13,033.66 | | $13,033.66 |
| Filmore, Wanda | $6,817.61 | | $6,817.61 |
| Fitzgerald, Latasha | $2,406.21 | | $2,406.21 |
| Flakes, Cara | $250.00 | | $250.00 |
| Fofana, Falikou | $13,893.02 | | $13,893.02 |
| Foster, Alma | $250.00 | | $250.00 |
| Franklin, Stephanie | $250.00 | | $250.00 |
| Freeman, Natalie | $11,587.07 | | $11,587.07 |
| Fullbright, Janet | $12,804.50 | | $12,804.50 |
| Fultcher, Terri | $13,706.83 | | $13,706.83 |
| Gachie, Charles | $1,403.62 | | $1,403.62 |
| Galvan Garcia, Guillermo | $250.00 | | $250.00 |
| Galvan, Maria G. | $12,933.40 | | $12,933.40 |
| Garner, Shanequa | $1,904.92 | | $1,904.92 |
| George, Olasomi | $14,738.06 | | $14,738.06 |
| Gibbs, Dimitria | $13,721.15 | | $13,721.15 |
| Gonzalez, Omaida | $20,152.04 | | $20,152.04 |
| Gordon, Uriel | $6,001.21 | | $6,001.21 |
| Graham, Rashard | $9,209.50 | | $9,209.50 |
| Groves Jr., Anthony Ray | $7,032.45 | | $7,032.45 |
| Haile, Biniam | $10,928.22 | | $10,928.22 |
| Hall, Larry | $12,933.40 | | $12,933.40 |
| Hammad, Aziz | $10,426.93 | | $10,426.93 |
| Harris, Arzia | $13,935.99 | | $13,935.99 |
| Harris, Iris C. | $9,023.30 | | $9,023.30 |
| Harris, Jacques | $12,732.88 | | $12,732.88 |
| Harvey, Sharon | $2,706.99 | | $2,706.99 |
| Hassan, Abdulkadir | $7,204.32 | | $7,204.32 |
| Hassen, Ahmed | $10,426.93 | | $10,426.93 |
| Haten, Lee | $14,551.87 | | $14,551.87 |
| Hearne, Jodeci | $14,551.87 | | $14,551.87 |
| Henry, Breon | $7,863.16 | | $7,863.16 |
| Henry, Chandra L. | $14,322.70 | | $14,322.70 |
| Henry, Fabion | $14,337.03 | | $14,337.03 |
| Henry, Teela | $11,587.07 | | $11,587.07 |
| Henson, Shanekia | $11,930.81 | | $11,930.81 |
| Hereford, Clarice | $13,219.85 | | $13,219.85 |
| Hewitt, Brittany | $7,619.68 | | $7,619.68 |
| Hicks, Robert N. | $4,912.69 | | $4,912.69 |
| Hodges, Clarencia | $4,912.69 | | $4,912.69 |
| Holt, Rosalyn | $3,222.61 | | $3,222.61 |
| Hunter, Reno | $11,529.78 | | $11,529.78 |
| Ikwuagwu, Benjamin | $13,678.18 | | $13,678.18 |
| Ismael, Salah | $12,732.88 | | $12,732.88 |
| Ivory, Dermalis | $13,706.83 | | $13,706.83 |
| Iwuh, Eusebio | $14,652.12 | | $14,652.12 |
| Jacobs, Debra | $14,337.03 | | $14,337.03 |
| James, Bettina | $14,551.87 | | $14,551.87 |
| John, Suhbesi | $12,231.59 | | $12,231.59 |
| Johnson, Allaisa | $4,511.65 | | $4,511.65 |
| Johnson, Charlotte | $10,670.41 | | $10,670.41 |
| Johnson, Dahnelle | $6,817.61 | | $6,817.61 |
| Jones, LaTaunya T. | $13,534.95 | | $13,534.95 |
| Joyce, Michael | $6,617.09 | | $6,617.09 |
| Kindle, Kisha | $12,475.07 | | $12,475.07 |
| Kirby, Taimeka | $250.00 | | $250.00 |
| Lacy, Cary E. | $18,619.51 | | $18,619.51 |
| Laguna, Alan | $14,551.87 | | $14,551.87 |
| Lamidi, Linda | $14,637.80 | | $14,637.80 |
| Larios, Rosemary M. | $12,861.79 | | $12,861.79 |

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

| NAME OF PLAINTIFF | SETTLEMENT AMOUNT | SERVICE AWARD | TOTAL AMOUNT |
|---|---|---|---|
| Lee, Angel | $6,259.02 | | $6,259.02 |
| Lemma, Kassahun | $8,120.97 | | $8,120.97 |
| Lewis, Norris | $13,835.73 | | $13,835.73 |
| Lobe, Bernard | $8,393.10 | | $8,393.10 |
| Lott, Rickie | $9,324.08 | | $9,324.08 |
| Loville, Patricia | $250.00 | | $250.00 |
| Marino, Joseph | $4,812.43 | | $4,812.43 |
| Mark, Kimberly | $21,040.05 | | $21,040.05 |
| Martin, Keldred | $12,876.11 | | $12,876.11 |
| Martin, Natsha Kirkendoll | $7,519.42 | | $7,519.42 |
| Martin, Pat | $13,835.73 | | $13,835.73 |
| Martin, Tyarha | $8,722.53 | | $8,722.53 |
| Mason, Connie | $7,018.12 | | $7,018.12 |
| Maxwell, Ingrid | $21,040.05 | | $21,040.05 |
| Mazengia, Melaku | $13,090.95 | | $13,090.95 |
| McCarty, Ramonia | $13,133.92 | | $13,133.92 |
| McFarland, Kimberly | $10,240.73 | | $10,240.73 |
| McGowan, Catrina | $11,630.03 | | $11,630.03 |
| Mills, Jermaine | $13,964.64 | | $13,964.64 |
| Mitchell, Sylvia | $8,622.27 | | $8,622.27 |
| Mokei, David | $13,935.99 | | $13,935.99 |
| Monguno, Katsina | $14,337.03 | | $14,337.03 |
| Moore, Natalie | $250.00 | | $250.00 |
| Moreland, Ryan | $2,807.25 | | $2,807.25 |
| Moreno, Luis | $14,294.06 | | $14,294.06 |
| Morris, Sebrina | $8,235.55 | | $8,235.55 |
| Morris, Tammy | $4,511.65 | | $4,511.65 |
| Mugisha, Ndikumana A. | $13,406.05 | | $13,406.05 |
| Murphy, Rakeisha | $250.00 | | $250.00 |
| Mwajasho, Ayoub I. | $18,648.16 | | $18,648.16 |
| Naba, Zimapi | $10,670.41 | | $10,670.41 |
| Nelson, Brianna | $3,408.80 | | $3,408.80 |
| Nikiema, Ernest | $11,730.29 | | $11,730.29 |
| Nnadi, Charles | $11,128.74 | | $11,128.74 |
| Odum, Laquna | $13,406.05 | | $13,406.05 |
| Oduniyi, Taiwo | $14,036.25 | | $14,036.25 |
| Oguntolu, Johnson | $13,835.73 | | $13,835.73 |
| Oladega, Michele | $7,619.68 | | $7,619.68 |
| Olajolumo, Olushola | $14,695.09 | | $14,695.09 |
| Olufemi-Dada, Olujimi | $13,893.02 | | $13,893.02 |
| Ombeni, Kevin | $8,321.49 | | $8,321.49 |
| Onumonu, Emmanuel | $14,337.03 | | $14,337.03 |
| Onuoha, Krystal | $13,434.70 | | $13,434.70 |
| Onyejiaka, Alex | $14,193.80 | | $14,193.80 |
| Oshonowe, Tolulanu | $250.00 | | $250.00 |
| Ossavou, Laryska | $14,695.09 | | $14,695.09 |
| Owolabi, Olubunmi | $14,437.28 | | $14,437.28 |
| Paire, Mamphine | $14,551.87 | | $14,551.87 |
| Palmer, Georgan | $14,279.73 | | $14,279.73 |
| Pardue, Ashley | $8,679.56 | | $8,679.56 |
| Pearl, Aisha | $13,105.27 | | $13,105.27 |
| Peevy, Gerald | $7,318.90 | | $7,318.90 |
| Perkins, Kenneth | $6,531.15 | | $6,531.15 |
| Phillips, Tiffany | $3,007.77 | | $3,007.77 |
| Pineda, Carlos | $14,437.28 | | $14,437.28 |
| Popoola, Gabriel | $12,933.40 | | $12,933.40 |
| Porter, Bryant | $11,114.42 | | $11,114.42 |
| Proctor, Raven | $8,049.36 | | $8,049.36 |
| Provost, JaQuira | $16,571.37 | | $16,571.37 |
| Randle, Hubert | $6,917.87 | | $6,917.87 |
| Reed, Veronica | $6,316.31 | | $6,316.31 |
| Richards, Larry | $12,231.59 | | $12,231.59 |
| Roberts, Kaleb | $16,771.88 | | $16,771.88 |
| Roberts, Paul | $250.00 | | $250.00 |
| Robinson, Adelphia | $8,221.23 | | $8,221.23 |

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

| NAME OF PLAINTIFF | SETTLEMENT AMOUNT | SERVICE AWARD | TOTAL AMOUNT |
|---|---|---|---|
| Robinson, Dora | $15,124.77 | | $15,124.77 |
| Rojas, Joshua | $21,054.37 | | $21,054.37 |
| Said, Ferej | $11,229.00 | | $11,229.00 |
| Said, Monsur | $14,637.80 | | $14,637.80 |
| Sanchez, Francisco | $13,105.27 | | $13,105.27 |
| Scott, Sherise | $15,568.78 | | $15,568.78 |
| Shepherd, Billy | $14,036.25 | | $14,036.25 |
| Shita, Adeola | $1,704.40 | | $1,704.40 |
| Shittabey, Afusat | $14,551.87 | | $14,551.87 |
| Sillah, Idrissa | $14,551.87 | | $14,551.87 |
| Simmons, Sharvail | $14,136.51 | | $14,136.51 |
| Simpson, Collin | $5,915.28 | | $5,915.28 |
| Singleton, Alice, deceased | $4,826.75 | | $4,826.75 |
| Sloan, Colleen | $15,883.88 | | $15,883.88 |
| Smith, James | $12,446.43 | | $12,446.43 |
| Smith, LaTayna | $13,735.47 | | $13,735.47 |
| Smith, Terri J. | $13,778.44 | | $13,778.44 |
| Solomon, Samantha | $4,540.30 | | $4,540.30 |
| Southern, Monica | $250.00 | | $250.00 |
| Spikes, Jzavia | $5,027.27 | | $5,027.27 |
| Spivey, Patrika L. | $644.52 | | $644.52 |
| St. Clair, Nicole | $401.04 | | $401.04 |
| St. Cloud, Marley | $8,923.04 | | $8,923.04 |
| Steele, Tammy | $7,619.68 | | $7,619.68 |
| Sterling, Paul | $12,432.11 | $10,000.00 | $22,432.11 |
| Stewart, Donovan | $11,128.74 | | $11,128.74 |
| Stredic, Prince-Allen | $6,917.87 | | $6,917.87 |
| Taylor, Tiffany | $14,050.57 | | $14,050.57 |
| Terrones, Ananias | $13,678.18 | | $13,678.18 |
| Tessema, Leykun A. | $250.00 | | $250.00 |
| Tezeno, LaTaunya | $11,329.26 | | $11,329.26 |
| Thierry, Nina | $13,320.11 | | $13,320.11 |
| Thomas, Louis | $21,040.05 | | $21,040.05 |
| Thomas, Wanza | $2,864.54 | | $2,864.54 |
| Thompson, Tonya | $14,136.51 | | $14,136.51 |
| Timmons, Britney | $2,921.83 | | $2,921.83 |
| Trotter, Ellen | $20,309.59 | | $20,309.59 |
| Ussery, Tiffany | $14,279.73 | | $14,279.73 |
| Vasquez, Francisca | $10,756.35 | | $10,756.35 |
| Vasquez, Nubia | $13,234.18 | | $13,234.18 |
| Vieyra, Clarise | $14,666.45 | | $14,666.45 |
| Walker, Ezell | $9,023.30 | | $9,023.30 |
| Walker, Martha | $12,331.85 | | $12,331.85 |
| Washington, Stacee | $15,497.16 | | $15,497.16 |
| Washington, Tiffany | $4,139.26 | | $4,139.26 |
| Wedlaw, Lenisha | $4,139.26 | | $4,139.26 |
| White, Brandy | $13,749.79 | | $13,749.79 |
| Whitfield, Kashica | $14,623.48 | | $14,623.48 |
| Wiggins, Chanelle | $12,632.62 | | $12,632.62 |
| Wiles, Sandra | $10,255.06 | | $10,255.06 |
| Wilkins, LaSanjania | $1,990.86 | | $1,990.86 |
| Wilkinson, Eric B. | $15,139.10 | | $15,139.10 |
| Williams, Fredrick | $6,531.15 | | $6,531.15 |
| Williams, Henry | $13,935.99 | | $13,935.99 |
| Williams, Keola | $4,139.26 | | $4,139.26 |
| Williams, Khyla | $3,910.10 | | $3,910.10 |
| Williams, Tomeka | $20,309.59 | | $20,309.59 |
| Williams, Uvenia | $20,309.59 | | $20,309.59 |
| Williams/Myers, Tonya | $14,236.77 | | $14,236.77 |
| Wilson, Chandra | $250.00 | | $250.00 |
| Wilson, Jimmy | $16,757.56 | | $16,757.56 |
| Wilson, Kimberly | $18,175.51 | | $18,175.51 |
| Wondwosen, Mesfin | $14,695.09 | | $14,695.09 |
| Wright, Karnetta | $12,732.88 | | $12,732.88 |
| Yemane, Belete | $11,028.48 | | $11,028.48 |

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

| NAME OF PLAINTIFF | SETTLEMENT AMOUNT | SERVICE AWARD | TOTAL AMOUNT |
|---|---|---|---|
| Yirgu, Mekonnen | $11,429.52 | | $11,429.52 |
| Yobo, Udeme M. | $10,426.93 | | $10,426.93 |
| | | | |
| **TOTAL** | **$2,839,165.94** | | **$2,849,165.94** |

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

# Exhibit B
# CLASS NOTICE

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PAUL STERLING on behalf of himself individually, and ALL OTHERS SIMILARLY SITUATED**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**GREATER HOUSTON TRANSPORTATION COMPANY, TEXAS PARATRANSIT, INC., YELLOW CAB PARATRANSIT SERVICES, INC. and METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY,**<br><br>     **Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 4:20-cv-00910** |

**NOTICE OF SETTLEMENT FOR _____ IN THE AMOUNT OF: _____**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU WORKED AS A DRIVER IN THE METROLIFT PROGRAM AND CONSENTED TO JOIN THIS CASE.**

**I.     DESCRIPTION OF THE LAWSUIT**

In March 2020, a former driver in the METROLift program ("Plaintiff") brought this lawsuit alleging that Yellow Cab and the Metropolitan Transit Authority of Harris County, TX ("METRO") misclassified him and all other drivers in the METROLift program as independent contractors when they should have been classified as employees. As a result, the Plaintiff alleged that Yellow Cab and METRO failed to pay premium overtime wages for all hours worked in excess of 40 hours in a workweek and failed to pay for all work-related expenses. The Plaintiff sought unpaid overtime wages, reimbursement for work related expenses, liquidated damages, attorneys' fees and costs.

In July 2021, the Southern District of Texas conditionally certified this case as a collective action and authorized notice to be sent to a class of workers defined as follows:

**All current and former drivers of the METROLift program who were classified as independent contractors for at least one week during the three**

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

**year period prior to the date the court authorizes notice to the present. Excluded from this class are any drivers in the METROLift program who either (1) owned a taxi cab for use in the METROLift program during the entire three year period prior to the date the court authorizes notice, or (2) who were under a lease to own program during the entire three year period prior to the date the court authorizes notice.**

Yellow Cab subsequently filed for bankruptcy and, as a result, the Plaintiff's claims against Yellow Cab were separated, and this case proceeded solely against METRO.

You timely returned a consent form to join the case.

## II.   HOW THE SETTLEMENT WAS REACHED

During the lawsuit, both Plaintiff and METRO vigorously presented their factual and legal positions and faced uncertainty as to which side was correct.  Plaintiff argued that the drivers were subject to the control of METRO, were required to follow METRO's policies and procedures, METRO controlled their rates of pay and hours of work, and METRO had overall authority over the METROLift program.  METRO vigorously denied that it employed the drivers, misclassified the drivers, or engaged in any unlawful conduct.  METRO argued that Yellow Cab had a lawfully classified the drivers in the METROLift program as independent contractors.  METRO argued that the drivers were hired by Yellow Cab, controlled by Yellow Cab, paid by Yellow Cab, and all other indicia of an employment relationship were controlled by Yellow Cab.  Considering the risks of litigation and the significant cost associated, Plaintiff and METRO attended mediation and reached a settlement of the claims.

During the lawsuit, pay records, time records, and trip records were produced by Yellow Cab for the individuals who joined this case. Using these records, Plaintiff calculated what he believed to be potential amount owed for unpaid wages and other damages. Likewise, METRO analyzed the records and presented various challenges to Plaintiff's calculations. Both parties' legal and factual arguments were considered in reaching a final settlement amount.

After the settlement was reached, the parties submitted the settlement to the United States District Court for the Southern District of Texas for approval.  The Court approved the settlement as fair and reasonable given the circumstances of the case.

There is a Claims Administrator who is responsible for distributing the settlement payments.  The Claims Administrator's contact information is:

**ILYM Group, Inc.**
**14771 Plaza Dr. L.**
**Tustin, CA 92780**
**888-250-6810**

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

### III.   YOUR SETTLEMENT AMOUNT

This case has settled.  Your individual settlement is based on (1) the date your "opt-in" consent form was filed with the Court, (2) the number of weeks that you drove in the METROLift program during the relevant time, (3) your pay rate, and (4) an estimated number of hours you worked each week. You were then allocated your proportionate share of the settlement. That is, hypothetically, if Plaintiff claimed that the entire class might be able to recover $100,000 and a Class Member might be able to recover  $2,000, the Class Member's proportionate share of the settlement is two percent (2%) and the Class Member will receive that percentage of the settlement proceeds after fees, costs, and the named plaintiff's incentive payment have been deducted.

Your Individual Settlement Payment listed at the top of this Notice is subject to a tax breakdown of 50% W-2 wages, and 50% 1099 non-wage income.  No tax advice is being provided and you can consult with a tax advisor if you have questions about the tax treatment of this payment.

### IV.   HOW TO CLAIM YOUR SETTLEMENT AMOUNT

Attached to this letter is a check with your individual settlement amount that was approved by the Court.  As a material term of this settlement, you release (a) Metropolitan Transit Authority of Harris County, TX and (b) the predecessors, successors, present and former affiliates, parents, subsidiaries, insurers, officers, directors, agents, members, shareholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with, any of the entities identified in (a) and (b) from any and all wage and hour claims, demands, and causes of action arising at any time prior to the date on which the Court enters the Final Approval Order as an Order of Court: (a) that were asserted in this Lawsuit; (b) for unpaid wages (including, but not limited to, claims for minimum wage and overtime compensation); (c) for liquidated damages, interest, penalties, attorney's fees, expenses, costs; (d) for unreimbursed work-related expenses; and (e) any other relief otherwise available under the FLSA or any other federal, state or local laws governing the payment of wages.  However, you will not release any claim for damages arising out of personal injuries or any claim that you may have against the Greater Houston Transportation Company, Texas Paratransit, Inc., and Yellow Cab Paratransit Services, Inc.

The above description is a summary of the release described in the Settlement Agreement.  If you would like a copy of the Order approving the settlement or the Settlement Agreement, please contact the attorneys below.

### V.   QUESTIONS

Please carefully review this notice which applies to your settlement with METRO.  If you have any questions, you can email or call your attorneys listed below.

Please keep a copy of this Notice for your records.

HODGES & FOTY, L.L.P.

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
Email: pbarnes@hftrialfirm.com

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

# Exhibit C
# LIST OF FLSA CLASS MEMBERS WHO
# HAVE OUTSTANDING ASSIGNMENTS

DocuSign Envelope ID: C2A0ABA1-5B00-4D8F-805B-000502EC1B64

# Opt-In Plaintiffs Who Acquired Pre-Settlement Loans

1. JaQuira Provost

2. Tammi Carson